# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

**February 26, 2016**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**GUARDIAN FIBERGLASS, INC.,**
**Employer Below, Petitioner**

**vs.)    No. 15-0329** (BOR Appeal No. 2049705)
            (Claim No. 2012028478)

**GEORGE O'CONNELL,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Guardian Fiberglass, Inc., by T. Jonathan Cook, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review.

This appeal arises from the Board of Review's Final Order dated March 12, 2015, in which the Board modified a July 24, 2014, Order of the Workers' Compensation Office of Judges to reflect that the compensable conditions of the claim are dizziness, asthma, and toxic effect of mold. The Board of Review held that allergic rhinitis was not a compensable condition of the claim. In its Order, the Office of Judges reversed the claims administrator's May 24, 2012, decision, which rejected Mr. O'Connell's application for workers' compensation benefits, and held the claim compensable for dizziness, allergic rhinitis, asthma, and toxic effect of mold. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. O'Connell worked as an engineering technician for Guardian Fiberglass, Inc. On March 6, 2012, Mr. O'Connell sought treatment from Kevin Culbert, D.O., for symptoms related to exposure to airborne mold within his office. Mr. O'Connell reported that while redecorating and moving furniture in his office on February 27, 2012, he discovered patches of black discoloration on the walls that appeared to be mold. Mr. O'Connell and his co-workers decided

1

to scrub the walls with bleach and repaint the office to eliminate the problem. At this time, however, Mr. O'Connell began experiencing various symptoms including sneezing, coughing, and dizziness. Dr. Culbert found that Mr. O'Connell's symptoms were related to his exposure to airborne mold spores at work, and he recommended that he remain off work until an environmental hygienist evaluated his office space and implemented measures to abate the mold problem in his work space. A week later, Mr. O'Connell underwent an allergy test from Asthma & Allergy Center of the Northern Shenandoah Valley. Camilla Hollen, MMS, PA-C, reviewed the results of Mr. O'Connell's allergy testing and found that he did not have an allergic response to house dust, dust mites, cockroaches, or molds. She also found that his pulmonary function was within normal limits. However, Ms. Hollen found that Mr. O'Connell had rhinitis and unspecified asthma related to exposure to mold at work. She determined that Mr. O'Connell should not return to work because of his reaction to mold exposure. Mr. O'Connell also underwent a chest x-ray at this time, which was normal.

For the next six months, Mr. O'Connell continued to receive treatment from the Asthma & Allergy Center. He came under the care of Robert McQueen, M.D., who found that Mr. O'Connell's symptoms were most likely due to an inflammatory response to mold but that he was not allergic to mold. Dr. McQueen found that Mr. O'Connell returned to work once his symptoms subsided, but he began to experience episodes of dizziness again. Dr. McQueen believed that Mr. O'Connell's symptoms were associated with his exposure to mold and their severity correlated to the amount of time he spent at work. He noted that Mr. O'Connell experienced one instance of hives on his face after working half a day in his office. Dr. McQueen believed that the only way to improve Mr. O'Connell's condition was to avoid exposure to mold. He recommended that Mr. O'Connell not return to work until the mold problem in his office was eliminated. Based on his exposure and symptoms, Mr. O'Connell filed an application for workers' compensation benefits claiming that he had developed an occupational disease from exposure to mold. Ms. Hollen wrote a letter to the claims administrator supporting Mr. O'Connell's application. She stated that he had developed a disease due to mold exposure at work. She stated that there was no evidence of an allergic response to mold, but she found instead that Mr. O'Connell was suffering from the toxic effect of mold exposure. Dr. McQueen also wrote a letter to the claims administrator in support of his application for workers' compensation benefits. Mr. O'Connell continued to receive treatment during this time from Dr. Culbert. However, after reviewing air and surface sampling of toxigenic mold taken from Mr. O'Connell's office, Dr. Culbert found that there was no reason for Mr. O'Connell to remain off work.

On May 24, 2012, the claims administrator rejected Mr. O'Connell's application for workers' compensation benefits. Following this decision, Christopher Martin, M.D., evaluated Mr. O'Connell and found that he was not exposed to an unusual amount of mold in his work place. Dr. Martin believed that the mold present in Mr. O'Connell's office would not have been sufficient to cause adverse health consequences. Dr. Martin further noted that Mr. O'Connell did not have any diagnosable medical condition that could be causally related to his employment for Guardian Fiberglass, Inc. Dr. Martin found that the nature of Mr. O'Connell's symptoms were not consistent with the toxic effects of mold exposure. Dr. Martin specifically noted that the normal chest x-ray ruled out the recognized effects of mold exposure such as asthma and lung

infection. However, on July 24, 2014, the Office of Judges reversed the claims administrator's decision and held the claim compensable for dizziness, allergic rhinitis, asthma, and toxic effect of mold. The Board of Review modified the Office of Judges' Order on March 12, 2015, to reflect that the compensable conditions of the claim were dizziness, asthma, and toxic effect of mold. The Board of Review held that allergic rhinitis was not a compensable condition of the claim. Guardian Fiberglass, Inc., appealed the Board of Review's decision to this Court.

The Office of Judges concluded that Mr. O'Connell has suffered an occupational disease related to his exposure to mold while working for Guardian Fiberglass, Inc., and it held his claim compensable for dizziness, allergic rhinitis, asthma, and toxic effect of mold. The Office of Judges based this conclusion on the treatment notes of Dr. Culbert, Ms. Hollen, and Dr. McQueen. It found that these treatment notes created a causal connection between Mr. O'Connell's symptoms and his exposure to mold at work. The Office of Judges noted that Mr. O'Connell's symptoms would subside when he remained off work but would flare up when he returned to work. The Office of Judges noted that the allergy testing in the record did not show that Mr. O'Connell's occupational disease was the result of an allergy to mold. However, it held that the allergy testing did not preclude Mr. O'Connell from receiving workers' compensation benefits for the symptoms related to his exposure to mold. The Office of Judges also considered the evaluation of Dr. Martin, but it did not rely on his opinion.

The Board of Review modified the Order of the Office of Judges to reflect that the claim was held compensable for dizziness, asthma, and toxic effect of mold. The Board of Review found that the Office of Judges was clearly wrong to hold the claim compensable for allergic rhinitis. It based this conclusion on the testing conducted by the Asthma & Allergy Center which showed that Mr. O'Connell did not have an allergic response to exposure to mold. The Board of Review found that this testing was support by the evaluation of Dr. Martin and by statements in Dr. McQueen's treatment notes indicating that Mr. O'Connell's symptoms were based on the toxic effect of mold instead of an allergic response.

We agree with the conclusions and findings of the Board of Review. Mr. O'Connell has presented sufficient evidence to show that he suffered an occupational disease in the course of and resulting from his employment. The treatment notes of Dr. McQueen and Ms. Hollen demonstrate that Mr. O'Connell experienced dizziness, asthma, and toxic effects of exposure to mold. Dr. McQueen's and Ms. Hollen's treatment notes also provide a sufficient causal connection between Mr. O'Connell's symptoms and his employment, particularly considering that there is evidence his condition improved while he remained off work and gradually deteriorated when he returned. The allergy testing conducted by the Asthma & Allergy Center indicated that Mr. O'Connell did not suffer an allergic response to mold. However, Dr. McQueen suspected that Mr. O'Connell's symptoms were due to an inflammatory response instead of an allergic response to mold, and the allergy testing conducted on Mr. O'Connell does not undermine Dr. McQueen's opinion. The evaluation of Dr. Martin is not sufficiently consistent with the remainder of the evidence in the record, and the Office of Judges was justified in disregarding his opinion.

3

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: February 26, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II